**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **M.C.**

**No. 25-262** (Nicholas County CC-34-2024-JA-101)

**MEMORANDUM DECISION**

Petitioner Father E.C.[1] appeals the Circuit Court of Nicholas County's March 31, 2025, order terminating his parental and custodial rights to M.C., arguing that the court erred in denying his motion for post-termination visitation.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In October 2024, the DHS filed a petition alleging that the petitioner and the mother abused drugs to the detriment of their parenting abilities. Specifically, shortly before the petition's filing, the petitioner tested positive for cocaine, morphine, methamphetamine, amphetamine, fentanyl, and heroin. Additionally, the petitioner had been admitted to the hospital due to an infection in his leg caused by xylazine use but then left the hospital against medical advice.

At an adjudicatory hearing the following month, the parents stipulated to the allegations against them and moved for post-adjudicatory improvement periods upon their assertion that they had been accepted into inpatient substance abuse treatment. The court concluded that the parents abused and neglected the child and granted their motions for post-adjudicatory improvement periods. The court ordered the parents to, among other things, submit to random drug and alcohol testing at least three times per week, remain free of drugs and alcohol, attend their rehabilitation programs and follow all recommendations, maintain contact with the DHS, successfully complete in-home services, and participate in parental fitness evaluations.

In February 2025, the circuit court held a hearing to review the parents' improvement periods. Although represented by counsel, neither parent appeared. According to the petitioner's counsel, the parents were at a hospital in Charleston, West Virginia, but the petitioner failed to specify the exact hospital. The petitioner's counsel indicated that the parents suffered from "pretty

---

[1] The petitioner appears by counsel Joseph M. Mosko. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Carl E. Hostler. Counsel Denise N. Pettijohn appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

severe wounds [related to drug use]. . . and due to these wounds, [they] could not get accepted into treatment." The petitioner's counsel also informed the court that he had requested the petitioner to provide medical records for both parents, but no records were introduced. The court found that the parents lacked good cause for their absence and revoked their improvement periods, explaining that the parents "have not done anything to participate."

In March 2025, the guardian filed a report in which she noted that the parents had participated in only two parenting classes, after which they ceased participating in their improvement periods entirely. Further, the guardian confirmed that the parents were not attending substance abuse treatment, as they claimed that open wounds and other complications from infections related to their drug use prevented their participation. However, the guardian explained that when the DHS attempted to obtain corroborating medical records from Charleston Area Medical Center, they were told that no records existed. The parents never provided any records, as requested, although they did provide pictures of their wounds. The guardian also noted that, due to their noncompliance, the parents had no visits with the child during the proceedings. According to the guardian, M.C., then nine years old, was "severely distressed by the lack of progress of his parents." Although the child did not want the parents' parental rights terminated, the guardian believed this preference was not in his best interests, given the parents' extreme drug use.

That same month, the circuit court held the final dispositional hearing. Again, neither parent appeared for the hearing, but both were represented by counsel. The court received evidence in support of the DHS and guardian's position that termination of parental rights was appropriate. The petitioner's counsel "requested that the [c]ourt not put a no contact order in place and instead leave discretion up to the adoptive placement." The guardian again noted that the child wished to maintain contact with the parents but argued that continued contact was not in the child's best interest given their ongoing drug use and continued health issues, including the infections from their open wounds. Upon findings that the petitioner could not substantially correct the conditions of abuse and neglect in the near future and that it was necessary for the child's welfare, the court terminated the petitioner's parental and custodial rights to M.C.[3] The court also denied post-termination visitation, finding that it was not in the child's best interests, given the severity of the parents' ongoing drug use. The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner challenges only the circuit court's denial of post-termination visitation. As we have explained,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of

---

[3] The court also terminated the mother's parental and custodial rights to the child. The permanency plan for the child is adoption in the current placement.

appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002).[4] At the outset, we note that the petitioner's request below that the circuit court "leave discretion up to the adoptive placement" is in conflict with our prior direction that "continued contact where determined to be in the best interest of the child [can] be ordered not as a right of the parent, but rather as a right of the child." *In re Christina L.*, 194 W. Va. at 455 n.9, 460 S.E.2d at 701 n.9. Because such visitation is the right of the child, the terms thereof cannot be left to the discretion of the child's custodian. *See In re K.S.*, 246 W. Va. 517, 531, 874 S.E.2d 319, 333 (2022) (making clear that children's right of post-termination visitation with their mother "cannot be held hostage by the biological fathers"). Accordingly, the court was in no position to grant the relief the petitioner requested. Further, the record is clear that continued contact was not in the child's best interests. While the petitioner argues that it was his "medical condition" that formed the basis of the circuit court's ruling, it is clear that it was, in fact, the petitioner's extreme ongoing drug use—of which his open wounds were a symptom—that required denial. Regardless of the child's express wishes to remain in contact with the petitioner,[5] the circuit court found that continued contact would simply not be in his best interests, and we agree. The petitioner also cites to the guardian's claim that contact could, at some point in the future, be beneficial if the petitioner "got [himself] together." However, this speculation is not compelling because it inherently acknowledges that, at the time the court ruled on the motion for post-termination visitation, the same would be detrimental to the child. Accordingly, we conclude that the court did not err in denying post-termination visitation.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 31, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: March 24, 2026

---

[4] We apply the standards in place at the time of the entry of the circuit court's order denying post-termination visitation but note that, after its entry, this Court provisionally amended Rule 15(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings to more clearly articulate and adopt appropriate standards for consideration of post-termination visitation.

[5] We note that, because the child was nine years old at the time of disposition and the court did not make a finding that he was otherwise of an age of discretion, the court was not statutorily obligated to consider the child's wishes. *See* W. Va. Code § 49-4-604(c)(6)(C) (requiring, at disposition, that circuit court "shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights").

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III